UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN C. MILLER,

                Plaintiff,                Civil Action No. 17-11665
                                                          Honorable Marianne O. Battani
                                                          Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 13]**

Plaintiff Steven C. Miller ("Miller") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #12, 13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Miller is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Miller's Motion for Summary Judgment (**Doc. #12**) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

**II.    REPORT**

    **A.    Background**

Miller was 49 years old at the time of his alleged onset date of June 30, 2013, and at 6'1"

tall weighed approximately 250 pounds during the relevant time period. (Tr. 66, 158, 178). He completed high school and worked as an ironworker for almost 30 years before he stopped working on June 30, 2013, because of his medical condition. (Tr. 178-79). He now alleges disability as a result of a torn biceps tendon, ankle pain, and bilateral knee pain. (Tr. 178).

After Miller's application for DIB was denied at the initial level on March 17, 2014 (Tr. 107-10), he timely requested an administrative hearing, which was held on November 12, 2015, before ALJ Laura Chess (Tr. 58-95). Miller, who was represented by attorney Aaron Levin, testified at the hearing, as did vocational expert Kenneth Browde. (*Id.*). On January 5, 2016, the ALJ issued a written decision finding that Miller is not disabled under the Act. (Tr. 44-53). On March 29, 2017, the Appeals Council denied review. (Tr. 1-6). Miller timely filed for judicial review of the final decision on May 25, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Miller's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Miller is not disabled under the Act. At Step One, the ALJ found that Miller has not engaged in substantial gainful activity since June 30, 2013 (the alleged onset date). (Tr. 46). At Step Two, the ALJ found that he has the severe impairments of status post-left biceps tendon repair, arthritis, chondromalacia patellae, and obesity. (*Id.*). At Step Three, the ALJ found that Miller's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Miller's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: can lift and/or

3

carry 20 pounds occasionally and 10 pounds frequently with the right upper extremity; can lift and/or carry 10 pounds occasionally and 5 pounds frequently with the left upper extremity; can stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday with normal breaks; can push and/or pull occasionally with the left upper extremity (his ability to push and/or pull is unlimited other than what is shown for lifting and/or carrying); can occasionally climb ladders, ropes, and scaffolds and can frequently climb ramps and stairs; can occasionally kneel, crouch, and crawl but can frequently balance and stoop; can occasionally reach with the non-dominant, left upper extremity in front, laterally, and overhead; can have occasional handling with the left upper extremity; and cannot work at unprotected heights. (Tr. 47-48).

At Step Four, the ALJ determined that Miller is not capable of performing any of his past relevant work. (Tr. 51). At Step Five, the ALJ concluded, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Miller is capable of performing a significant number of jobs that exist in the national economy. (Tr. 52). As a result, the ALJ concluded that Miller is not disabled under the Act. (Tr. 53).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.     Analysis**

In his motion for summary judgment, Miller argues that: (1) the ALJ erred in concluding that he does not meet or medically equal Listing 1.02A; and (2) that the ALJ's RFC finding is not supported by substantial evidence. Each of these arguments is addressed below.

*1.  Substantial Evidence Supports the ALJ's Evaluation of Listing 1.02A*

Miller argues that the ALJ erred in finding at Step Three that his ankle impairment, combined with his knee condition (chondromalacia patellae), does not meet or medically equal Listing 1.02A. (Doc. #12 at 26-29). To meet the criteria of this listing, Miller must establish that he suffers from a major dysfunction of one or more joints, resulting from any cause, that is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A.  Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.02A.

Miller argues that the ALJ erred in concluding, "in purely generic and conclusory terms that 'the record … does not demonstrate' a meeting or equaling of the criteria of Listed Impairment 1.02 without any allusions to the evidence of record." (Doc. #12 at 26 (quoting Tr. 47)). It is true that the ALJ's Step Three analysis is rather terse, but this fact alone does not warrant remand. Rather, while it might be preferable for an ALJ to explicitly tie her discussion of a relevant listing's elements to specific medical evidence, the Sixth Circuit "has allowed courts to scan the decision for statements that support the step three analysis, and numerous district and circuit courts have agreed" on this approach. *Johnson v. Comm'r of Soc. Sec.*, 2015 WL 730094, at *26 (E.D. Mich. Feb. 19, 2015) (citing *White v. Colvin*, 2013 WL 5212629, at *7

(E.D. Mich. Sept. 16, 2013)). Thus, "a court can find the listing analysis sufficient by looking at the entire opinion," rather than limiting its review to any particular section of the ALJ's decision. *Id.* As a result, "an ALJ need not fully discuss the Step III findings so long [as] 'the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that the Plaintiff did not meet the requirements for [the] listing.'" *Vandenboss v. Comm'r of Soc. Sec.*, 2015 WL 3823558, at *5 (E.D. Mich. June 18, 2015).

Here, a review of the ALJ's decision as a whole makes clear that she appropriately identified and discussed evidence in the record that supports her Step Three analysis. Specifically, the ALJ considered and gave substantial weight to the opinion of the state agency examining physician, Eric VanderHaagen, D.O., noting that, as an experienced medical consultant, he has "expertise in evaluating claimants' impairments under the Social Security Act and Regulations." (Tr. 50). *See* 20 C.F.R. § 404.1513a(b)(1) (recognizing that "medical or psychological consultants are highly qualified and experts in Social Security disability evaluation"). Dr. VanderHaagen reviewed and considered the medical evidence pertaining to Miller's knee and ankle impairments and concluded that he does not meet or medically equal a Listing (Tr. 100-03),[1] and the record contains no medical opinion to the contrary.

Moreover, as the Commissioner persuasively argues (Doc. #13 at 6-8), even setting aside

---

[1] In his reply brief, Miller takes issue with the ALJ's reliance on Dr. VanderHaagen's opinion, asserting that he only had the opportunity to review half of his medical records. (Doc. #14 at 3). But, Miller has not pointed to any later-submitted medical evidence that would undercut Dr. VanderHaagen's opinion. Indeed, the only medical evidence Miller cites in support of his Step Three argument are the findings of the consultative examiner, Neil Johnson, M.D. (Doc. #12 at 26-27), and Dr. VanderHaagen reviewed and considered this evidence (Tr. 100). Under the circumstances, then, the Court finds no error in the ALJ's decision to give substantial weight to this opinion. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (an ALJ may rely on the opinion of a non-examining physician who did not have the opportunity to review later-submitted medical records so long as the record gives "some indication that the ALJ subjected such an opinion to scrutiny").

Dr. VanderHaagen's opinion, remand is not warranted because Miller has not pointed to any evidence leaving open the possibility that Listing 1.02A is met. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014)) (remand warranted only if claimant "point[s] to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing"); *see also Leveque v. Colvin*, 2015 WL 4601156, at *6 (E.D. Mich. July 15, 2015) ("evidence does not demonstrate the possibility that [the claimant's impairments] could meet the criteria of [the listing]"). Specifically, Miller failed to establish that he cannot "ambulate effectively" and, thus, cannot possibly satisfy one of Listing 1.02A's principal requirements.

As to the definition of effective ambulation, the regulations provide that the "[i]nability to ambulate effectively means an *extreme* limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1) (emphasis added). The regulations go on to state that, generally, this requires the claimant to show that he cannot walk "without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00(B)(2)(b)(2). Here, Miller admittedly does not use or require an assistive device to ambulate. (Tr. 197).

In arguing that he is unable to ambulate effectively, and therefore meets this aspect of Listing 1.02A, Miller faults the ALJ for relying on his ability to independently complete his activities of daily living. (Doc. #12 at 27). This argument is without merit, as the regulations specifically provide that the ability to independently complete daily activities is consistent with effective ambulation. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2) ("To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a

sufficient distance to be able to carry out activities of daily living."). Here, the ALJ noted that Miller's daily activities included "running a wood burner,[2] hunting, fishing, taking care of a pet, maintaining personal hygiene, preparing simple meals, mowing the lawn, driving, shopping in stores … visiting friends … and attending church."[3] (Tr. 49 (citing Tr. 191-98)). Indeed, Miller testified that he went deer hunting just a "couple of weeks" before the hearing. (Tr. 70). Activities such as these certainly indicate that he is able to ambulate effectively. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2) ("examples of ineffective ambulation include, but are not limited to … the inability to carry out routine ambulatory activities, such as shopping and banking ….").

Miller also points to the findings of the consultative examiner, Neil Johnson, M.D., who saw him on March 11, 2014. (Doc. #12 at 26-27 (citing Tr. 368-72)). On examination, Dr. Johnson noted that Miller "walked with an antalgic small stepped gait with mild limp to the right without the use of an assistive device." (Tr. 369). He also noted severe difficulty tandem walking and squatting. (*Id.*). In conclusion, Dr. Johnson stated that Miller could not perform his prior work as an ironworker, as his knee and ankle pain would make standing and climbing

---

[2] Miller asserts that he "never stated that he was 'running' a wood burner," but instead "said that he would 'go outside to throw some little chunks of wood in the outside wood burner." (Doc. #14 at 3). Miller overstates any inconsistency by the ALJ as she clearly referenced Miller's use of a wood burner merely as one example of ways in which he engaged in activities that were at odds with his professed physical limitations; the ALJ never suggested that Miller routinely hauled large logs out to the wood burner. Indeed, the ALJ referenced Miller's testimony that he "uses a wood splitter or cuts the *lighter* wood." (Tr. 49) (emphasis added).

[3] The Court agrees with the Commissioner that "[t]he fact that the ALJ discussed [Miller's] daily activities in the RFC section of the decision does not diminish their relevance in terms of the listing analysis." (Doc. #13 at 7, n. 2 (citing *Arnold v. Comm'r of Soc. Sec.*, 2016 WL 8376403, at *7 (E.D. Mich. Dec. 6, 2016) ("court can find the listing analysis sufficient by looking at the entire opinion, rather than limiting its review to any particular section of the ALJ's decision. As a result, an ALJ need not fully discuss the Step III findings so long [as] the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that the Plaintiff did not meet the requirements for [the] listing") (internal citations and quotations omitted))).

"difficult to impossible." (Tr. 372). But, Miller's reliance on Dr. Johnson's findings is insufficient to establish ineffective ambulation, as the regulations require a claimant to do more than merely establish that he has some difficulty walking. *See Johnson v. Comm'r of Soc. Sec.*, 2016 WL 2342892, at *4 (W.D. Mich. Apr. 15, 2016) (concluding that the claimant's assertion that he "has problems walking" does not preclude a finding, based on the evidence in the record, that he can ambulate effectively under Listing 1.02(A)); *see also Vandenboss*, 2015 WL 3823558, at *6. For all of these reasons, substantial evidence supports the ALJ's finding that Miller does not meet Listing 1.02A.

### 2.   *Substantial Evidence Supports the ALJ's RFC Finding*

As set forth above, the ALJ considered both the medical opinion evidence and Miller's subjective complaints and concluded that he retains the RFC to perform a limited range of light work. (Tr. 47-48). Miller now argues that this conclusion is not supported by substantial evidence.

#### a.   *The Medical Opinion Evidence*

In formulating Miller's RFC, the ALJ considered and, to differing degrees, based her decision on: (1) the medical opinion of Dr. Byron Chamberlain, Miller's arm surgeon; (2) the opinion of Dr. Johnson, the consultative examiner; (3) the opinion of state agency physician Dr. VanderHaagen; and (4) the functional capacity evaluation ("FCE") conducted by physical therapist Amy Williams and adopted by John Flood, M.D. (Tr. 50-51). Miller's argument that the ALJ improperly weighed this evidence is not persuasive.

As the ALJ noted, a December 2013 MRI showed a full thickness tear of Miller's left biceps tendon (Tr. 48, 268), and Dr. Chamberlain performed biceps tendon repair surgery on January 18, 2013 (Tr. 48, 270). Miller underwent physical therapy, and by June 24, 2013, Dr. Chamberlain opined that Miller was "able to return to work without restrictions." (Tr. 312).

Miller challenges the ALJ's decision to afford "great weight" to Dr. Chamberlain's opinion, arguing that she ignored the fact that contrary to Dr. Chamberlain's findings, his "left biceps tendon continued to be abnormal post-surgically." (Doc. #12 at 22). But, this argument mischaracterizes the ALJ's analysis. Contrary to Miller's contention, the ALJ noted that a September 2013 MRI showed a partial thickness tear along the medial aspect of the distal biceps tendon insertion. (Tr. 48, 348). As a result, in weighing Dr. Chamberlain's opinion, the ALJ specifically noted that she "considered subsequent records, including the opinion of Dr. Johnson [], in finding that [Miller] does have the residual limitations in use of the upper left extremity set forth [in the RFC]." (Tr. 50). Indeed, the ALJ's RFC finding is consistent with Dr. Johnson's opinion that Miller continued to experience left arm problems post-surgery and could not do the heavy lifting required in his prior job as an ironworker. (Tr. 51, 371). Thus, Miller has not shown that the ALJ erred in evaluating Dr. Chamberlain's opinion.

In formulating Miller's RFC, the ALJ also gave substantial weight to Dr. VanderHaagen's opinion that Miller could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday; frequently push and pull with the left upper extremity; and frequently handle and reach overhead, in front, and/or laterally with the left upper extremity. (Tr. 50, 101-03). Miller now argues that the ALJ's reliance on Dr. VanderHaagen's opinion over the opinions of "treating doctor[] LaClair"[4] is "absurd." (Doc. #12 at 22).

---

[4] Without citing to the record, Miller also mentions Drs. Bortel and DeBari as treating physicians whose opinions the ALJ should have adopted over that of Dr. VanderHaagen. (Doc. #12 at 22). But, neither of these doctors provided a medical opinion concerning Miller's RFC, much less an opinion that is inconsistent with either Dr. VanderHaagen's assessment or the ALJ's RFC finding. Dr. Bortel treated Miller during the period at issue (Tr. 342-47, 412-14), but did not say "what [he] could still do despite [his] impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (defining medical opinions). If anything, Dr. Bortel's treatment notes *support* the ALJ's decision, as Miller reported in April 2015 that he was "able to function reasonably well with [his] elbow." (Tr. 414). Dr. DeBari did not complete a medical opinion

11

As an initial matter, Miller's argument that an ALJ *must* give more weight to the opinion of a treating physician than a non-treating physician misapprehends the law. Indeed, an ALJ may rely on the opinion of a state agency physician over the opinion of a treating physician where evidence supports the ALJ's analysis. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651-52 (6th Cir. 2006). Here, the ALJ explained that she gave substantial weight to Dr. VanderHaagen's opinion because:

> [I]t is consistent with the medical evidence and the record as a whole, including the clinical examination findings and the claimant's reported activities of daily living. Furthermore, Dr. VanderHaagen is an experienced medical consultant who has acquired expertise in evaluating claimants' impairments under the Social Security Act and Regulations.

(Tr. 50). In contrast, the ALJ gave only partial weight to Dr. LaClair's opinion that Miller cannot lift more than five pounds with his left arm, noting that "subsequently received evidence suggests that [he] has greater function[al] capacity than opined by Dr. LaClair." (Tr. 50, 353-54). This evidence includes the FCE performed by Amy Williams, O.T.R. in December 2014 (Tr. 449-60), which indicates that, contrary to Dr. LaClair's opinion that Miller could not lift/carry more than five pounds with his left arm (Tr. 354), Miller demonstrated the ability to carry ten pounds occasionally with that arm during the FCE (Tr. 453).

---

either. (Tr. 18-26). But, more importantly, Dr. DeBari first saw Miller several months *after* the ALJ's decision (Tr. 20-23), and the Appeals Council determined that his treatment notes did not "provide a basis for changing the [ALJ's] decision." (Tr. 2). The Appeals Council's determination in this respect now precludes the Court from considering Dr. DeBari's note unless Miller establishes that remand is appropriate under sentence six of 42 U.S.C. § 405(g). *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Here, Miller did not argue for a sentence six remand in his motion for summary judgment. (Doc. #12), and his one-sentence, conclusory assertion in his reply brief that it is "incumbent on this Honorable Court to issue a sentence six remand" (Doc. #14 at 5) is wholly insufficient. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal quotations omitted).

Miller challenges the ALJ's reliance on the FCE, arguing that because Williams is a therapist, it was error for the ALJ to afford "partial weight" to her opinion because she is not an "acceptable medical source" within the meaning of the regulations. (Doc. #12 at 23-24). Indeed, Miller asserts that such an opinion should not "carry any weight with the examiner." (*Id.* at 24). This argument again misapprehends the law, as an ALJ is permitted to rely on the opinions of individuals who are not "acceptable medical sources" under the regulations. *See Soc. Sec. Rul. 06-03p*, 2006 WL 2329939, at *4 (Aug. 9, 2006). Thus, it was entirely appropriate for the ALJ to afford some weight to the FCE, despite the fact that it was conducted by a therapist, not a physician.[5] *See Hudson v. Comm'r of Soc. Sec.*, 2018 WL 1249321, at *8 (E.D. Mich. Jan. 31, 2018) ("Opinions from sources not considered 'acceptable medical sources' should still be evaluated when assessing the severity and impact of an individual's impairments ….").

In summary, the opinion of Dr. VanderHaagen and the results of the FCE substantially support the ALJ's RFC assessment. The opinions of Dr. Chamberlain and Dr. Johnson also generally support the ALJ's decision. In contrast to this medical evidence, Miller can point only to the opinion of Dr. LaClair, which is directly contradicted by Miller's actual abilities, as demonstrated during the FCE. Taken as a whole, the ALJ's analysis of the opinion evidence was reasonable, and the fact that Miller simply disagrees with the weight assigned to the various medical opinions is not a basis for remand. *See, e.g., Price v. Comm'r Soc. Sec. Admin.*, 342 F.

---

[5] In her motion, the Commissioner asserts that this is particularly true here, where the results of the therapist's evaluation were adopted by Dr. John Flood. (Doc. #13 at 12 (citing Tr. 447-48)). According to Miller, this argument is "bootstrapping of the worst variety." (Doc. #14 at 5). The Court disagrees with Miller's argument, but, regardless of whether the FCE evaluation was "blessed" by Dr. Flood, the ALJ did not err in affording it some weight for the reasons set forth above.

App'x 172, 177-78 (6th Cir. 2009) (finding no basis for remand where plaintiff's "argument boils down to what weight should be given opposing medical opinions").

### b. *Miller's Subjective Complaints*

Miller also challenges the ALJ's evaluation of his subjective complaints, and her determination that they were not entirely credible. (Doc. #12 at 21-22). Courts have recognized, however, that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must then consider other evidence of pain, including (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations. *See* 20 C.F.R. §§ 404.1529(c)(3).

Here, in finding that Miller's complaints were less than fully credible, the ALJ relied on his daily activities, as well as the fact that he collected unemployment benefits during his alleged period of disability. (Tr. 49-50). Miller challenges both of these factors. (Doc. #12 at 21-22).

With respect to his daily activities, the ALJ noted that these activities included:

> … running a wood burner, hunting, fishing, taking care of a pet, maintaining personal hygiene, preparing simple meals, mowing the lawn, driving, shopping in stores, watching television, visiting with friends, talking on the phone and attending church. The claimant testified that he

14

> uses a wood splitter or cuts the lighter wood. He testified he hunted a deer with a crossbow two weeks before the hearing. He stated he does both bank and boat fishing, and testified he had fished two weeks before the hearing.

(Tr. 49 (internal citation omitted)). In his motion, Miller faults the ALJ for saying that he "does both bank and boat fishing" (Tr. 49), claiming he did boat fishing only. (Doc. #12 at 22). Miller appears to be correct in this respect (Tr. 71)[6], but even omitting "bank fishing" from the analysis, his daily activities and other hobbies still include deer hunting and boat fishing, and otherwise remain substantial, and the ALJ was permitted to consider them in evaluating his subjective allegations of disability. *See, e.g., Hiter v. Comm'r of Soc. Sec.*, 2014 WL 916774, at *4 (E.D. Mich. Mar. 10, 2014) (finding no basis for remand where the ALJ had substantial evidence to support her credibility determination "beyond any alleged misconception of Plaintiff's daily activities").

The ALJ also properly considered the fact that Miller collected unemployment benefits while alleging disability. *See Nace v. Comm'r of Soc. Sec.*, 2015 WL 1511055, at *28 (E.D. Mich. Mar. 25, 2015) (ALJ may consider collection of unemployment benefits as an adverse credibility factor). Miller argues that this factor should not weigh against him because he collected unemployment for only two months and then "voluntarily removed himself from unemployment insurance benefits" after an MRI showed that he still had a partial tear in his biceps tendon. (Doc. #12 at 21). As the Commissioner points out, however, the MRI results did not alter Miller's symptoms, and he testified that he "knew [his] arm hurt" when he started

---

[6] The hearing transcript reflects the following question and answer on this issue, and suggests that the ALJ simply misheard Miller:

Q. Do you do bank fishing or boat fishing?
A. Do boat.

(Tr. 71).

15

collecting unemployment benefits. (Doc. #13 at 15 (citing Tr. 67)). Thus, it was not unreasonable for the ALJ to rely on the fact that Miller, while fully aware of the degree to which his symptoms affected his ability to work, still represented that he was ready, willing, and able to work in order to collect unemployment benefits.

In sum, substantial evidence supports the ALJ's findings regarding Miller's subjective complaints. *See, e.g., Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal") (internal quotations omitted).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Miller's Motion for Summary Judgment (**Doc. #12**) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

Dated: March 19, 2018  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager